IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIGNATURE MANAGEMENT TEAM, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AUTOMATTIC, INC.,<br><br>Defendant. | Case No.: C-13-80028 RCB<br><br>**ORDER DENYING AMTHRAX'S MOTION TO QUASH** |

## I. INTRODUCTION

On February 8, 2013, Signature Management Team, LLC ("TEAM") submitted a proposed subpoena pursuant to the Digital Millennium Copyright Act of 1998 ("DMCA"). The proposed subpoena was directed to Automatic, Inc. ("Automattic"), the provider of the systems and network in which "Amthrax," the alleged infringer, posted a copyrighted work. The subpoena was issued on February 11, 2013. Presently before the Court is Amthrax's Motion to Quash Subpoena ("Motion").[1] A hearing on the Motion was held on April 19, 2013, at 9:30 am. For the reasons stated below, the Court denies the Motion.

## II. REQUEST FOR JUDICIAL NOTICE

The standard for judicial notice is set forth in Rule 201 of the Federal Rules of Evidence, which allows a court to take judicial notice of an adjudicative fact not subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court" or it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

---

[1] The action was referred to the undersigned magistrate for the purposes of discovery.

Amthrax seeks judicial notice of twenty-three documents, including seven news articles, nine Amthrax blog posts, two Amthrax-Amway blog posts, one court filing, one posting on the blog of Orrin Woodward, the "about us" section of the LIFE website, an advertisement for the Team Builder's Textbook, and an advertisement for an old edition of the Team Builder's Textbook. Amthrax's Request for Judicial Notice ("RJN"), Ex. A-V, X. Amthrax clarifies that he does not seek judicial notice of the facts contained in the publications referenced, but rather seeks judicial notice that the publications were made to provide context for his speech at issue in this case. Reply in Support of Motion to Quash ("Reply"), 7 n.7.[2] As the existence of each of the blog postings, news articles, the "about us" section of the LIFE website, and the first advertisement for the Team Builder's Textbook are all readily verifiable by reference to the web addresses listed in each respective exhibit, the Court takes judicial notice of their existence. *See* RJN, Exs. A-I, K-V. The Court does not take judicial notice of any facts recited therein. The Court also takes judicial notice of the existence of the court filing as a matter of public record that is readily verifiable by resort to sources whose accuracy cannot readily be questioned. *See id.* at Ex. J. The Court does not take judicial notice of the advertisement for an old edition of the Team Builder's Textbook, as certain information at the web address listed in the document attached to the request for judicial notice differs from that currently available at the same web address. *See id.* at Ex. X. The Court relies on the noticed documents only to the extent they are referenced below.

Amthrax also seeks judicial notice of the fact that the 2009 version of the Team Builder's Textbook is available for free download at http://technovatetranslations.com/samples/sample-sp-02-original.pdf. The Court denies judicial notice of this asserted fact because it cannot be verified.

## III. BACKGROUND

### A. The Subpoena

TEAM submitted a "Cover Letter," a "DMCA Notification," and a proposed subpoena to the court on Febraury 8, 2013. Dkt. Nos. 1-2. In the Cover Letter, Rod Divelbiss ("Divelbiss"), TEAM's counsel, stated that TEAM was submitting three items in support of its request for a DMCA

---

[2] TEAM's objection to Amthrax's Request for Judicial Notice, as well as its objections to the declarations filed by Amthrax and Amthrax's counsel, Joshua Koltun, violate Civil Local Rule 7-3, which requires evidentiary objections to be contained within the opposition brief or memorandum. In any event, the Court relies only on admissible evidence.

subpoena: (1) The DMCA Notification; (2) a proposed subpoena directed to Automattic; and (3) a sworn declaration, contained within the cover letter, that the purpose for which the subpoena is sought is proper under the DMCA. Dkt. No. 1.

The proposed subpoena demanded production of "1) the identity and address of the person/entity posting the work entitled, 'The Team Builder's Textbook' at http://amthrax.files.wordpress.com.2013/01/sample-sp-02-original.pdf, and 2) the identity and address of the owner/operator of the Amthrax blog hosted on the Wordpress website." Dkt. No. 2. The stated deadline for production was: "Expeditiously, but not later than 02/15/2013." *Id*.

The DMCA Notification identified: (1) the copyrighted work – the Fourth Edition of the Team Builder's Textbook; (2) the infringing material – a verbatim copy of the copyrighted work posted on Automattic's system or network; (3) the URL of the posting of the infringing material – http://amthrax.files.wordpress.com.2013/01/sample-sp-02-original.pdf; (4) the copyright owner's – TEAM's – contact information; (5) the copyright infringer's information – the operator, referred to only as Amthrax, of a blog on Automattic's system identified as http://amthrax.wordpress.com/. *Id*. The DMCA Notification also stated that the posting was without authorization. *Id*.

The supporting declaration reads: "I declare under penalty of perjury that to my knowledge the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under title 17 USC §100, et seq." *Id*.

**B. Facts**

TEAM's subpoena is based Amthrax's posting of a copy of its purportedly copyrighted textbook on his blog. Declaration of Rob Hallstrand in Support of Opposition ("Hallstrand Declaration"), ¶ 5; Declaration of Rod Divelbiss in Support of Opposition ("Divelbiss Declaration"), ¶ 2, Ex. A (cover of the Fourth Edition of the "Team Builder's Textbook" that indicates that it was copyrighted by Obstacles Press, Inc., a trademark of TEAM Partnerships, Inc.).[3] Amthrax uses his blog to attack TEAM's rhetoric and "use team as an example to expose the hypocrisies, fallacies, and unsustainable hype surrounding [multi-level marketing]." Declaration of Doe/Amthrax in Support of

---

[3] For ease of reference, the Court follows Amthrax's lead in referring to Amthrax using male pronouns without making any reference to Amthrax's actual gender. *See* Motion, 4 n.3.

3

Motion ("Amthrax Declaration"), ¶ 2; *see also* RJN, Exs. G-I, K-M, O-Q, S, U.[4] He states that his posts have elicited comments from readers. Amthrax Declaration, ¶ 2. Amthrax does not dispute that he posted a hyperlink to a complete copy of the 2009 Edition of the Team Builder's Textbook after mentioning it in a blog post. *Id*. at ¶ 4. The hyperlink led to a verbatim copy of the textbook without any commentary. Hallstrand Declaration, ¶¶ 3-4. Since February 22, 2013, Amthrax no longer provides any hyperlink to the textbook. Amthrax Declaration, ¶ 7. Amthrax expresses his concern that he will be subject to retaliation based on threatening comments made by another anonymous blogger. *Id*. at ¶¶ 8-9.[5]

### B. The Motion to Quash

Amthrax argues that he has standing to seek to quash a subpoena that seeks information he contends is privileged pursuant to the First Amendment. *Id*. at 11-12 (citing Fed. R. Civ. P. 45(c); *Highfields Capital Management, L.P. v. Doe*, 385 F.Supp.2d 969, 971 (N.D. Cal. 2005)). Amthrax asserts that he has a First Amendment right to speak anonymously on the internet. *Id*. at 12 (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995);

---

[4] TEAM objects to paragraph two of the Amthrax Declaration on relevance and hearsay grounds. Neither objection has merit. First, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The paragraph tends to show that the asserted speech in this action, posting the copyrighted work, was made in the context of a broader campaign of criticism and thus may warrant some First Amendment protection. It is relevant. Second, hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence for the truth of the matter asserted." Fed. R. Evid. 801(c). The paragraph does not offer any out of court statement for the truth of the matter asserted. Although it references commentary made by Orrin Woodward, TEAM, and followers of Amthrax's blog, the paragraph does so only to show that speech has been made. It does not recite what was said, or assert that anything that was said is true. Paragraph two does not contain any hearsay.

[5] TEAM objects to paragraphs eight and nine of the Amthrax Declaration on relevance and hearsay grounds. Both paragraphs are relevant because they tend to show that Amthrax will face retaliation if his identity is revealed. This is pertinent to his asserted First Amendment right to anonymity. Neither paragraph offers any out of court statement for the truth of the matter asserted. Amthrax offers two posts by another anonymous blogger. The first post reads: "The Peters are reportedly being sued by Eric Blomdahl. Peters are requesting donations for their legal defense. AMTHRAX and his handful of naysayers better help Raquel win, otherwise the stage may be set for their day in court as well." Amthrax asserts that this post shows that the anonymous poster is familiar with TEAM's efforts to obtain his identity through a DMCA subpoena and is threatening to use his identity for an inappropriate purpose, a defamation action. The post is not offered to prove the existence of the other lawsuit, or that the outcome of the other lawsuit will set the stage for Amthrax's own day in court. The post is admissible non-hearsay when considered for the purpose for which it is offered. It is inadmissible to prove the existence of the lawsuit it references. The second post reads: "I predict it is only a matter of time before the world gets to know AMTHRAX by name and many, if not all, of the identities of the vicious handful of resident mudslinging naysayers who oftentimes are very accusatory and easily keep AMTHRAX busy warning them to stop their name-calling while he tries to keep up with editing out their vulgarities. And they wonder why polite reasonable people don't comment more than once or twice on the AMTHRAX site. I can assure you that no one in the LIFE business really misses people with such character traits." This post is offered to show that a threat has been made to Amthrax. It is not offered to show the truth of any of its assertions. For that reason, it is admissible non-hearsay.

*Reno v. ACLU*, 521 U.S. 844, 870, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997)). Amthrax contends that where, as here, the speech involves a matter of public concern the party seeking enforcement of the subpoena must show that there is (1) a real evidentiary basis for believing that the party whose identity is sought engaged in wrongful conduct; and (2) that the conduct caused real harm that is sufficiently serious to outweigh relevant First Amendment interests. *Id*. at 13 (citing *Highfields*, 385 F.Supp.2d at 970-71, 975-76; *Art of Living Found. v. Does 1-10*, 2011 WL 5444622, at *6-*7 (N.D. Cal. Nov. 9, 2011)). Amthrax states that the court must consider the First Amendment interests of the speaker whose identity is sought and whether the discovery request is likely to result in a chilling of the protected activity of other speakers. *Id*. at 14. (citing *Art of Living*, 2011 WL 5444622, at *8-*9). Amthrax argues that TEAM must come forward to present a prima facie case of copyright infringement to satisfy the first prong. *Id*. Amthrax asserts that any minimal harm to TEAM is outweighed by the harm to Amthrax of stripping away his anonymity, citing his concern that he will be harassed and retaliated against by TEAM, including a potential defamation suit. *Id*. at 14-16.

Addressing the DMCA, Amthrax argues that the statute is designed to provide safe harbor for internet service providers by allowing the alleged infringer to step in and defend the alleged infringement. *Id*. at 16. Amthrax asserts that the purpose of the DMCA subpoena is not to confer the absolute right to learn an alleged infringer's identity, but to enable a copyright claimant to bring suit. *Id*. at17. Amthrax contends that the statutory purpose is satisfied because he has offered to accept service through his counsel and defend any copyright action anonymously. *Id*. Amthrax also argues that the DMCA subpoena in this case is being used as a pretext to pursue other claims, noting that the declaration offered in support of the subpoena was noncompliant with the statutory mandate as it only indicated that the information obtained would not be used for other purposes to Divelbiss' knowledge. *Id*. at 17-18. In addition, Amthrax implies that, because he removed the infringing document prior to receiving a take-down notice, the DMCA may no longer be used to identify him because he is a past infringer. *Id*. at 17.

**C.     Opposition**

In Opposition, TEAM asserts that the sole and dispositive issue is whether the DMCA subpoena was issued in compliance with the DMCA. Opposition to Motion to Quash ("Opposition"),

5

1  13. It argues that it is entitled to learn Amthrax's identity now because the DMCA subpoena was
2  properly issued in compliance with the statutory requirements. *Id*. at 6-8. TEAM contends that First
3  Amendment defenses do not apply to DMCA subpoenas, but only to subpoenas issued pursuant to
4  Federal Rule of Civil Procedure 45. *Id*. at 7, 9 (citing 17 U.S.C. § 512(h)(6)). Moreover, TEAM
5  asserts that Congress already weighed whatever First Amendment rights would be impinged by the
6  DMCA, and warns against the imposing on Congress' judgment in balancing First Amendment with
7  Article I, § 8 of the Constitution. *Id*. at 5-6 (citing *Eldred v. Ashcroft*, 537 U.S. 186, 208, 212, 123
8  S.Ct. 769, 154 L.Ed.2d 683 (2006)). In addition, TEAM argues that the DMCA is constitutional. *Id*.
9  at 6 (citing *In re Verizon Internet Servs., Inc.*, 257 F.Supp.2d 244, 260-68 (D.D.C. 2003) *rev'd on*
10 *other grounds*, *Recording Industry Ass'n of Am., Inc. v. Verizon Internet Servs, Inc.*, 351 F.3d 1229
11 (D.C. Cir. 2003)). TEAM contends that Amthrax's offer to appear anonymously is irrelevant because
12 the DMCA provides for the disclosure of his identity without providing for substitute arrangements.
13 *Id*. at 10. TEAM argues that Amthrax's purported fears that his identity will be inappropriately used
14 are self-serving misdirection. *Id*. at 9-10. Finally, TEAM contends that Amthrax's likely fair use
15 defense in any potential copyright action will fail. *Id*. at 10-13.

16     **D. Reply**

17 Amthrax argues that he may raise First Amendment objections by way of motion to quash.
18 Reply in Support of Motion to Quash ("Reply"), 2-6. Moreover, Amthrax asserts that the only
19 authority TEAM cites for the constitutionality of the DMCA, *Verizon*, involved only the
20 constitutionality of allowing the copyright claimant to request the court clerk to issue a subpoena. *Id*.
21 at 3 (citing *Verizon*, 257 F.Supp.2d at 248). In addition, Amthrax contends that *Verizon* rested its
22 conclusion that the request process was constitutional on the premise that the person who was the
23 subject of the subpoena would be able to object to, modify, or move to quash the subpoena pursuant
24 to Rule 45 in order to raise issues of privilege. *Id*. at 3-4 (citing *Verizon*, 257 F.Supp.2d at 263-64).
25 //
26 //
27 //
28 //

## III. ANALYSIS

### A. DMCA

#### 1. Background Law

The DMCA provision governing issuance of a subpoena to identify an infringer is 17 U.S.C. § 512(h). That section provides, in part, as follows:

> (h) Subpoena to identify infringer.--
> (1) Request.--A copyright owner or a person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection.
> (2) Contents of request.--The request may be made by filing with the clerk--
> (A) a copy of the notification described in subsection (c)(3)(A);
> (B) a proposed subpoena; and
> (C) a sworn declaration to the effect that the purpose for which the subpoena is sought is to obtain the identity of an alleged infringer and that such information will only be used for the purpose of protecting rights under this title
> …
> (5) Actions of service provider receiving subpoena.--Upon receipt of the issued subpoena, either accompanying or subsequent to the receipt of a notification described in subsection (c)(3)(A), the service provider shall expeditiously disclose to the copyright owner or person authorized by the copyright owner the information required by the subpoena, notwithstanding any other provision of law and regardless of whether the service provider responds to the notification.
> (6) Rules applicable to subpoena.--Unless otherwise provided by this section or by applicable rules of the court, the procedure for issuance and delivery of the subpoena, and the remedies for noncompliance with the subpoena, shall be governed to the greatest extent practicable by those provisions of the Federal Rules of Civil Procedure governing the issuance, service, and enforcement of a subpoena duces tecum.

17 U.S.C. § 512(h). Federal Rule of Civil Procedure 45 governs the procedure for quashing or modifying a subpoena duces tecum. In part, the rule provides:

> (c) Protecting a Person Subject to a Subpoena.
> …
> (3) Quashing or Modifying a Subpoena.
> (A) *When Required*. On timely motion, the issuing court must quash or modify a subpoena that:
> (i) fails to allow a reasonable time to comply;
> …

7

> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies…

Fed. R. Civ. P. 45(c)(3)(A).

As is clear from the title of § 512(h) – "[s]ubpoena to identify infringer" – the purpose of a DMCA subpoena is to identify a copyright infringer. TEAM argues that Rule 45 does not apply to a motion to quash a DMCA subpoena because § 512(h)(6) incorporates only "the procedure for issuance and delivery of the subpoena, and the remedies for noncompliance with the subpoena." Relying on this premise, TEAM contends that the First Amendment cannot provide a basis for quashing a DMCA subpoena.[6] TEAM relies on the language in § 512(h)(5) that requires expeditious disclosure of the information required by the subpoena "notwithstanding any other provision of law." TEAM contends that First Amendment defenses are barred by this language. Moreover, TEAM states that the constitutionality of the statute has been upheld, citing only *Verizon*, a district court opinion that was subsequently reversed on other grounds. However, the court in *Verizon* made its understanding clear, albeit in an alternative holding, that a party could protect its First Amendment interests by employing Federal Rule of Civil Procedure 45 to object to, modify, or move to quash a DMCA subpoena pursuant to 17 U.S.C. § 512(h)(6). *Verizon*, 257 F.Supp.2d at 263; *see also In re Verizon Internet Servs.*, 240 F.Supp.2d 24, 28 (D.D.C. 2003) *rev'd on other grounds*, *Recording Industry Ass'n of Am., Inc. v. Verizon Internet Servs, Inc.*, 351 F.3d 1229 (D.C. Cir. 2003) ("The issuance, delivery, and enforcement of subpoenas is to be governed (to the extent practicable) by the provisions of the Federal Rules of Civil Procedure dealing with subpoenas duces tecum"). As explained in more detail below, the Court concludes that a motion to quash a DMCA subpoena may properly raise an objection on the basis that the subpoena would require disclosure of matter protected by the First Amendment.

The text of § 512(h)(6), while not a model of clarity, anticipates that issues such as the First Amendment Privilege asserted here can be raised in opposition to a DMCA subpoena. The statute incorporates, to the greatest extent practicable, the Federal Rules of Civil procedure governing the

---

[6] TEAM asserts that the "sole and dispositive issue … is whether the DMCA Subpoena … was issued in compliance with the DMCA." Opposition, 13. TEAM also states that, because the DMCA subpoena issued, "[t]he Court determined that TEAM had met the statutory requirements." *Id*. at 7. This appears to imply that a DMCA subpoena can never be quashed because its issuance demonstrates its validity.

issuance, service, and enforcement of the subpoena duces tecum. Rule 45 provides for a motion to compel, and also for contempt for noncompliance, but only where a party, "having been served, fails without adequate excuse to obey a subpoena." Fed. R. Civ. P. 45(c)(2)(B), (e). Rule 45 itself, in its enforcement provisions, clearly anticipates the assertion of defenses to production. These provisions are incorporated by reference in § 512(h)(6).

Any other interpretation makes no sense. The argument that a motion to quash is barred because only the "enforcement" provisions of Rule 45 are incorporated (in addition to issuance and service) must be rejected. That reading of the statute would allow a subpoenaed party to raise its objections in a contempt proceeding – and risk sanctions – but not in advance of production deadlines in a motion to quash. The Court declines to give the statute such a strained reading.

More importantly, the broad reference to "other provision[s] of law" in § 512(h)(5) cannot be read to authorize enforcement of a DMCA subpoena in violation of the First Amendment. TEAM relies on Congress' broad authority to determine intellectual property regimes that, in that body's judgment, serve the ends of the Copyright Clause. *See Eldred*, 537 U.S. at 221, 123 S.Ct. 769, 154 L.Ed.2d 683. Congress is without power to expressly violate the First Amendment. Indeed, in *Eldred* the Court noted that the fair use doctrine and the challenged statutory scheme adequately addressed the First Amendment concerns at issue. *Id*. at 219-21. At minimum, TEAM's interpretation raises grave doubts as to the constitutionality of the DMCA subpoena provision. On the other hand, § 512(h) can be read to allow the recipient of the subpoena to challenge its validity in a motion to quash. Indeed, in every instance in which a party has sought to quash a DMCA subpoena, the courts have discussed the merits of the motion to quash without casting any doubt on the validity of the procedure. *See Maximized Living, Inc. v. Google, Inc.*, 2011 WL 6749017, *6 (N.D. Cal. Dec. 22, 2011) (granting a motion to quash for noncompliance with the notification requirement; failing to reach constitutional objections having granted the motion on nonconstitutional grounds); *Verizon*, 257 F.Supp.2d at 248-68, 275 (denying a motion to quash a DMCA subpoena after considering constitutional challenges to the DMCA raised under Article III and the First Amendment; stating in dicta that First Amendment objections to a DMCA subpoena could be raised by a motion to quash pursuant to Rule 45); *Recording Industry*, 351 F.3d at 1230 (reversing *Verizon*, granting a motion to

quash for noncompliance with the notification requirement; failing to reach the constitutional objections having granted the motion on nonconstitutional grounds); *In re Subpoena Issued Pursuant to the Digital Millennium Copyright Act to: 43SB.com, LLC*, 2007 WL 4335441, *4 (D. Idaho Dec. 7, 2007) (denying motion to quash where all requirements for issuance of a subpoena had been satisfied; granting motion to quash where there was no nexus between the identity sought and the alleged infringement). The Court declines to read the broad statutory language in such a way as to render the statute unconstitutional. *See Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 465-66, 109 S.Ct. 2558, 105 L.Ed.2d 77 (1989) ("When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principal that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided"). Rather, in accordance with the practice of courts applying the DMCA, the Court concludes that constitutional objections to a DMCA subpoena may properly be raised in a motion to quash.

### B. First Amendment

The First Amendment protects the right to anonymous speech. *See McIntyre*, 514 U.S. at 342, 115 S.Ct. 1511, 131 L.Ed.2d 426 ("An author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom protected by the First Amendment"). "[O]nline speech stands on the same footing as other speech – there is 'no basis for qualifying the level of First Amendment scrutiny that should be applied' to online speech." *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997)). "As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation … [or] concern about social ostracism.'" *Id.* (quoting *McIntyre*, 514 U.S. at 341-42, 115 S.Ct. 1511, 131 L.Ed.2d 426).

The right to anonymous speech is not absolute. *Id.* at 1173, 1177-78 (finding no clear error where the district court where the district court required the disclosure, subject to a protective order, of the identity of individuals alleged to have tortuously interfered with plaintiff's contracts by posting

10

anonymous messages on internet blogs; noting that a protective order is one of the tools available to the district court to oversee discovery of sensitive matters that implicate First Amendment rights). The degree of scrutiny varies depending on the circumstances and the type of speech at issue. *Id*. at 1173. Several district courts have addressed the question of whether a putative copyright holder may seek disclosure of an anonymous speaker that is alleged to have infringed on the copyright. *See Art of Living*, 2011 WL 5444622, at *3-*10; *Sony Music Entertainment Inc. v. Does 1-40*, 326 F.Supp.2d 556, 563-67 (S.D.N.Y. 2004); *Verizon*, 257 F.Supp.2d at 258-68. In each decision, the court began by considering the nature of the speech before determining the appropriate standard to apply. *See Anonymous Online Speakers*, 661 F.3d at 1177 ("we suggest that the nature of the speech should be a driving force in choosing a standard by which to balance the rights of anonymous speakers in discovery disputes. … The specific circumstances surrounding the speech serve to give context to the balancing exercise).

Both *Sony* and *Verizon* involved peer-to-peer file copying networks used to download, distribute, or make available for distribution copyrighted material. *See Sony*, 326 F.Supp.2d at 564; *Verizon*, 257 F.Supp.2d at 247. In *Sony*, the court concluded that the "conduct qualifie[d] as speech, but only to a degree" and thus deserved only protection that "is limited, and subject to other considerations." *Sony*, 326 F.Supp.2d at 564. In *Verizon*, considering a facial challenge to the DMCA, the court reasoned from the premise that the DMCA does not directly impact core political speech. *Verizon*, 257 F.Supp.2d at 260. The *Verizon* court proceeded to state that the First Amendment does not shield copyright infringement. *Id*. Nevertheless, the court concluded that "there is some level of First Amendment protection that should be afforded to anonymous expression on the Internet, even though the degree of protection is minimal where alleged copyright infringement is the expression at issue." *Id*.

In *Sony*, having determined that the purported infringers had some protected First Amendment interest in their anonymity, the court balanced five factors to determine whether the need for disclosure outweighed their First Amendment interests. *Sony*, 326 F.Supp.2d at 564-66. First, the court determined that the plaintiffs had made a concrete showing of a prima facie case of copyright infringement. *Id*. at 565-66. Second, the court found that the discovery request was sufficiently

11

specific to lead to identifying information of particular defendants to enable the plaintiffs to sue them and pursue claims in federal court. *Id*. at 566. Third, the court held that there were no alternative means to obtain the subpoenaed information. *Id*. Fourth, the court found that the plaintiffs would be unable to serve process without the subpoenaed information. *Id*. Fifth, the court concluded that the defendants had little expectation of privacy in downloading and distributing copyrighted songs without permission. *Id*. As each factor weighed in favor of allowing discovery, the court held that the "defendants' First Amendment right to remain anonymous must give way to plaintiffs' right to use the judicial process to pursue what appear to be meritorious copyright infringement claims." *Id*. at 567.

In *Verizon*, based on its characterization of the speech addressed by the DMCA, the court concluded that the DMCA does not violate the First Amendment. *Verizon*, 257 F.Supp.2d at 260-68. First, the *Verizon* court rejected the notion that the DMCA required "built-in safeguards" or judicial review because "[t]he DMCA places no limits on protected activity; it governs unprotected copyright piracy, and § 512(h) reaches only the identity of the subscriber (already known to the service provider), not any underlying expression. Moreover, the content of § 512(h) is … copyright legislation, where 'the wisdom of Congress' action … is not within [the Court's] province to second guess.'" *Id*. at 262 (quoting *Eldred*, 123 S.Ct. at 790). Even if additional safeguards were required, the court concluded that the DMCA requirements for seeking a subpoena and incorporation of the Federal Rules to provide access to judicial supervision by way of motions to quash the subpoena provided sufficient safeguards for Internet users' First Amendment rights. *Id*. at 262-63. Second, addressing the argument that the DMCA is overbroad, the court acknowledged that the threat of a subpoena under the DMCA and the resulting identity disclosure could discourage some Internet users from otherwise protected activity. *Id*. at 264. However, there was no evidence of the use of a DMCA subpoena to identify anyone aside from alleged copyright infringers. *Id*. The court declined to apply the "strong medicine" of the overbreadth doctrine absent a showing that the the subpoena authority granted by the DMCA "is so overbroad that it sweeps a substantial amount of protected expression within the [its] provisions." *Id*. at 266.

On the other hand, *Art of Living* involved pseudonymous posting of the "Breathe Water Sound Manual" which was allegedly copyrighted by the plaintiff. *Art of Living*, 2011 WL 5444622, at *1.

The posting was made on a blog under the pseudonym Skywalker as part of Skywalker's larger campaign to "debunk the notion that Ravi Shankar is an enlightened being in possession of mystical 'secret knowledge.'" *Id*. The plaintiff, Art of Living Foundation, was an international organization with chapters in over 140 countries teaching the spiritual lessons of "His Holiness Ravi Shankar." *Id*. The court concluded that Skywalker's condemnation of the large Art of Living Foundation touched on a matter of public interest. *Id*. at *6. Even though Skywalker appeared to have published protected materials, given the context Skywalker's speech "at least raise[d] significant constitutional issues," even if it was not political or religious speech entitled to the greatest First Amendment protection. *Id*.

In light of the significant constitutional issues, the *Art of Living* court declined to apply the *Sony* test. Instead, the court applied the test developed in *Highfields*, a case that did not involve a copyright claim. *Id*. at *7. The court reasoned that the *Highfields* test was consistent with Ninth Circuit precedent regarding the potential impact of a discovery request on chilling protected First Amendment activity. *Id*. Moreover, the court found that *Highfields* was factually analogous because it similarly concerned whether disclosure of the defendant's identity would deter other critics from anonymous critical speech on the internet. *Id*. Therefore, the *Art of Living* court recited a two-step inquiry, but decided only the second step because it found that step dispositive. *Id*. at *7-*10. At the first step, the plaintiff must produce competent evidence supporting a finding of each fact that is essential to a given cause of action. *Id*. at *7. At the second step, the court must compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of the plaintiff and a ruling in favor of the defendant. *Id*.

Applying the second step, the *Art of Living* court held that "to the extent that Skywalker's anonymity facilitates free speech, the disclosure of his identity is itself irreparable harm." *Id*. at *9. The court noted that the use of a pseudonym may enable Skywalker to garner a larger audience and thereby facilitate the free exchange of ideas. *Id*. The court further noted that the revelation of an anonymous speaker's identity may invite retaliation from those who oppose her ideas or from those whom she criticizes. *Id*. Skywalker submitted a declaration expressing his concern that the adherents of Ravi Shankar would harass or retaliate against him or his family if his identity would be disclosed. *Id*. Although the court did not find Skywalker's evidence particularly reliable, it found the reasonable

13

inference self-evident that unveiling Skywalker's identity would subject him to harm and chill others from engaging in protected speech. *Id*. The court found no similar harm to the Art of Living Foundation should Skywalker remain anonymous, noting that Skywalker had been engaged in the litigation and responsive to discovery requests. *Id*. at *10. The court noted that Skywalker's identity may later need to be revealed to facilitate a deposition or to enforce any judgment obtained against him. *Id*. Even so, the court quashed the subpoena seeking Skywalker's identity and stayed further discovery on that subject. *Id*.

### C.    Application to Facts

Under either test identified by Amthrax, the First Amendment does not preclude disclosure of his identifying information pursuant to a DMCA subpoena.[7] However, to minimize the interference with free expression, any information disclosed to TEAM in response to the subpoena may be used by TEAM solely for the purpose of protecting its rights under the Copyright Act, 17 U.S.C. § 101 et seq, and may not be disclosed to anyone other than the parties in this action and their counsel of record without further order of this Court.

### 1.    Nature of the Speech

Both *Art of Living* and *Sony* began by considering the nature of the speech in question. Here, as in *Art of Living* and unlike *Sony*, the alleged infringement involved the anonymous online posting of copyrighted material in the context of a critical campaign against the institution holding the copyright. Amthrax's criticism of TEAM and multi-level management schemes involves a matter of public concern. Against this backdrop, as in *Art of Living*, there is a substantial question as to whether the doctrine of fair use would apply in this case.[8] *See Art of Living*, 2011 WL 5444622, at *6; *see also* 17 U.S.C. § 107 ("the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by [an enumerated section], for the purposes of criticism, comment, news reporting, teaching…, scholarship, or research, is not an infringement on copyright"). Therefore, as in *Art of Living*, although Amthrax's speech in question, posting a verbatim copy of a copyrighted work, was neither political nor religious, it at least raises significant constitutional issues. *See Art of Living*, 2011 WL 5444622, at *6. This is far removed from *Sony*,

---

[7] Amthrax relies exclusively on his First Amendment right to anonymous speech in seeking to quash the subpoena.
[8] The parties dispute whether a fair use defense would be viable. The Court does not address that issue at this time.

which involved copying music files without "engaging in true expression." *Sony*, 326 F.Supp.2d at 564.

### 2. *Art of Living*

The *Art of Living* analysis involves (1) evaluating whether the party seeking the information has demonstrated a prima facie case of copyright infringement and (2) a balancing of harms. *See Art of Living*, 2011 WL 5444622, at *7. To establish a prima facie case of copyright infringement, a party must show (1) ownership of a valid copyright and (2) violation by the alleged infringer of at least one of the exclusive rights granted to copyright owners by the Copyright Act. *See* 17 U.S.C. § 501(a); *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1178 (9th Cir. 2011). As courts have noted, the DMCA essentially requires the party seeking a subpoena to plead a prima facie case of copyright infringement for a subpoena to issue. *See 43SB.com*, 2007 WL 4335441, at *4 (citing *Verizon*, 257 F.Supp.2d at 263). TEAM properly did so here. *See* Dkt. No. 1 (DMCA Notification). In addition, TEAM has submitted evidence to support its copyright claim. Divelbiss Declaration, Ex. A. Amthrax does not dispute posting a copy of the copyrighted work on his blog. Amthrax Declaration, ¶ 4. Accordingly, TEAM has demonstrated a prima facie case of copyright infringement.

Balancing the harms, the potential harm to Amthrax from discovery of his identity in compliance with the DMCA does not outweigh the potential harm to TEAM if Amthrax's Motion is granted. Amthrax identifies a number of potential harms if his identity is disclosed to TEAM. He is concerned that TEAM will retaliate against him for his critical speech, either by bringing a defamation suit or through some other means. Amthrax points out that such retaliatory action could chill the speech of other anonymous critics, who will fear retaliation if they continue to express their beliefs. However, Amthrax states that he is willing to accept service on any copyright claim through his counsel and anonymously defend this action.

It is apparent that Amthrax's First Amendment concerns are predicated on his underlying fear that TEAM will misuse the DMCA process. The DMCA subpoena is to be used solely for the purposes of protecting the serving party's rights in its copyright. *See* 17 U.S.C. § 512(h)(2)(C). Provided TEAM properly uses Amthrax's identifying information obtained using the DMCA

subpoena, and does not disseminate his identity or take any retaliatory action, Amthrax will suffer only minimal harm if his Motion is denied.

On the other hand, TEAM has an interest in obtaining Amthrax's identity to facilitate a copyright infringement action against Amthrax. This is true regardless of his offer to accept service through his attorney, as personal service will facilitate discovery, including a potential pre-trial deposition, and prevent TEAM from being forced to rely on Amthrax's good faith engagement in the litigation to move forward. *See Art of Living*, 2011 WL 5444622, at *10. The minimal potential harm to Amthrax of disclosure of his identifying information for the purposes of the DMCA does not justify the burden placed on TEAM by granting Amthrax's Motion.

### 3. *Sony*

In *Sony*, the court employed a five factor test weighing (1) whether the party seeking discovery made a prima facie claim of copyright infringement; (2) the specificity of the discovery request; (3) the absence of alternative means to obtain the subpoenaed information; (4) the central need for subpoenaed information; and (5) the expectation of privacy for the party opposing discovery. *Sony*, 326 F.Supp.2d at 565-67.

First, as discussed above, TEAM has made prima facie showing of copyright infringement. Second, the discovery requests seek only the identity and address of the person or entity that posted the purported infringing work and the identity and address of the owner or operator of the Amthrax blog. Given that the infringing work appeared to be posted by the operator of the blog, this request specifically sought only identifying information of the alleged infringer.

Third, unlike in *Sony*, TEAM has not made any showing that there is an absence of alternative means to obtain the subpoenaed information. *See Sony*, 326 F.Supp.2d at 566. For example, TEAM has not outlined any other steps it has taken to obtain Amthrax's identity. *See id*. Moreover, TEAM has not argued that it will be unable to obtain Amthrax's identity through other means.

Fourth, the need for the subpoenaed information is less central here than in *Sony*. Unlike *Sony*, Amthrax has offered to accept service and defend TEAM's potential copyright claim through his attorney. Therefore, TEAM will not be unable to serve process. *See id*. Even so, as discussed

1  above, TEAM has an interest in learning Amthrax's identity to facilitate litigation and discovery in
2  defense of its copyright.
3      Fifth, although Amthrax has a substantial expectation of privacy for his anonymous criticism
4  of TEAM and its business model, there is no similar expectation of privacy for copyright
5  infringement. As discussed above, Amthrax's speech, copying TEAM's work, raises significant First
6  Amendment questions in light of his potential fair use defense. Nevertheless, the DMCA subpoena
7  need only minimally interfere with his privacy interest, as Amthrax's identifying information obtained
8  using that subpoena may only be in vindicating TEAM's rights under its copyright. During any
9  copyright action, Amthrax will be able to raise his fair use defense.
10      Combined, the factors tip in favor of allowing TEAM to obtain Amthrax's identifying
11  information. TEAM has made a prima facie showing of copyright infringement, and the DMCA will
12  adequately protect Amthrax's First Amendment interest. The information may only be used for
13  asserting TEAM's rights under its copyright, and Amthrax will be able to raise his fair use defense in
14  those proceedings.

## IV. DISCOVERY LETTER BRIEF

16      There is also a dispute between Automattic and TEAM related to this action. Supplemental
17  Declaration of Kristi Vera-Martinez, Ex. A. Automattic stated that it would waive any and all
18  objections and promptly provide the requested information to TEAM if Amthrax's Motion to Quash is
19  denied. *Id*. at Ex. A at 5. In accordance with this Order denying Amthrax's Motion to Quash,
20  Automattic shall provide the requested identifying information to TEAM.
21  //
22  //
23  //
24  //
25  //
26  //
27  //
28  //

## V. CONCLUSION

For the foregoing reasons, Amthrax's Motion to Quash is DENIED. As stated above, any information disclosed to TEAM in response to the subpoena may be used by TEAM solely for the purpose of protecting its rights under the Copyright Act, 17 U.S.C. § 101 et seq, and may not be disclosed to anyone other than the parties in this action and their counsel of record without further order of this Court. Each party shall bear its own attorneys' fees and costs.

IT IS SO ORDERED.

Dated: April 22, 2013

_____

JOSEPH C. SPERO
United States Magistrate Judge